Transparent Ruler Company et al. *v.* C-Thru
Ruler Company et al.

Maltbie, C. J., Brown, Jennings, Ells and Dickenson, Js.

Argued October 8—decided November 18, 1948

*Isaac J. Kunik,* for the appellants (plaintiffs).

*Richard T. Steele,* for the appellees (named defendant et al.), with whom were *Francis W. Rohrmayer,* for the appellee (defendant Edward Zachs), and *Anna Zachs,* pro se, appellee (defendant).

Brown, J. This action was based on unfair competition by the defendants in offering for sale and ad-

vertising articles bearing the number of a patent which belongs to the plaintiffs. The plaintiffs claimed an injunction, an accounting and damages. The court rendered judgment for the defendants and the plaintiffs have appealed.

Under the view which we take of the case, the salient facts in the court's finding, which is subject to no material correction, may be thus summarized: The plaintiff Aronson is president of the plaintiff company, which sells rulers and measuring instruments made of transparent plastic material. He is the owner of patent No. 2095943 for an instrument of this nature, described as an "Improvement in Printers' Guide Setter and Registering Aid." The defendant company is a partnership, comprised since January, 1942, of the individual defendants. It also sells transparent rulers and measuring devices. On November 18, 1941, the Superior Court, in an action by the present plaintiffs against the C-Thru Ruler Company and Jennie R. Zachs, who was then sole owner thereof, enjoined the defendants from offering for sale any article bearing patent No. 2095943 and ordered the patent transferred to Aronson and an accounting. On July 28, 1942, this judgment was affirmed by this court. *Transparent Ruler Co.* v. *C-Thru Ruler Co.,* 129 Conn. 369, 28 A. 2d 232. Pursuant to the decree, an accounting to October 12, 1942, was had, the patent was assigned to Aronson and the judgment was fully satisfied.

The defendants' catalogue in use in February, 1942, a date prior to the judgment of this court, contained on the front page a prominent illustration of a graph based on the use of the device covered by patent No. 2095943, and the patent number itself in easily legible figures. In September, 1942, this was supplanted by a new catalogue which omitted the prominent illustration of the graph and the patent number. This new

catalogue did contain, however, fifteen different illustrated items whereon the patent No. 2095943 appeared. These illustrations, and similar ones which appeared in the February, 1943, issue of the trade journal "Modern Stationer" and in the June, 1943, issue of the buyer's guide "Who Makes It and Where," both of which were distributed to the stationery and office supply trade, showed the patent No. 2095943, but in such small type that, except to a person of unusually keen eyesight, it was illegible without the use of a magnifying glass. The defendants did nothing to notify readers of either of these publications that patent No. 2095943 did not belong to them.

The defendants' use of the patent No. 2095943 subsequent to July 28, 1942, was due to a mere inadvertence on their part. They had no intention of violating the injunction imposed by the final judgment of the Superior Court. In May, 1943, the defendants first became aware of the fact that these illustrations contained patent No. 2095943. Promptly thereafter, on May 25, 1943, they ordered a new catalogue eliminating all mention of patent No. 2095943. The number appeared neither in this nor in any of their subsequent catalogues of 1944, 1945 and 1946. They distributed many thousands of the catalogue for each of these years to their customers and to the office and supply trade. The plaintiff company marked its products with its own name and its trade-mark, "Transparule," and used black or green lines thereon and patent Nos. 1410542 and 2026768. The defendants marked their products with their name, "C-Thru Ruler Company," and their trade-mark, "C-Thru," featured zero centering scales, and in most instances employed red lines and red printing only. The products of the defendants could not be confused with those sold by the plaintiff company. No one was deceived by the defendants'

illegible publication of patent No. 2095943 above recited.

After the assignment of the patent to the plaintiff Aronson and the satisfaction of the judgment, he discovered the patent No. 2095943 in the illustrations advertising certain of the defendants' rulers and triangles. At no time, however, did he notify the defendants to desist from using the patent number. The defendants, subsequent to the accounting, sold no article with the patent No. 2095943 thereon. They made no profit from their inadvertent and unintentional publication of the number. The plaintiffs' business suffered no damage by reason of this publication.

Since the plaintiffs have abandoned their claim for an injunction, the issue is reduced to the question whether the court erred in denying them an accounting and damages predicated upon unfair competition by the defendants. By the allegations of the plaintiffs' complaint and their claims of law, this claimed unfair competition is restricted to the defendants' wrongful use of the plaintiffs' patent No. 2095943. Therefore, we confine our discussion to certain conclusions of the trial court, implicit in which is a single proposition sufficient in itself, if warranted, to sustain the judgment. The proposition is that the defendants, by inadvertently failing to remove the words "Patent No. 2095943," which were not legible to the naked eye of one with normal vision but appeared on the illustrations of articles in their catalogue and the two advertisements published in 1943, did not engage in unfair competition with the plaintiffs or either of them.

This terse statement of the nature, extent and legal effect of the defendants' use of the plaintiffs' patent No. 2095943 is an ultimate conclusion of fact. Conn. App. Proc. § 80. Encompassed within it is the deter-

mination of the fundamental question whether or not the defendants' conduct constituted unfair competition. This was a question of fact for the trial court to determine. *Middletown Trust Co.* v. *Middletown National Bank,* 110 Conn. 13, 20, 147 A. 22; *Yale & Towne Mfg. Co.* v. *Rose,* 120 Conn. 373, 382, 181 A. 8; *Yale Co-operative Corporation* v. *Rogin,* 133 Conn. 563, 571, 53 A. 2d 383. Although the first cited case was brought to enjoin the defendant's proposed adoption of a name bearing similarity to that of the plaintiff, the principle stated in that opinion (p. 20) applies mutatis mutandis with equal force here: "No inflexible rule can be laid down as to what use of names will constitute unfair competition; this is a question of fact. The question to be determined is whether or not, as a matter of fact, the name is such as to cause confusion in the public mind as between the plaintiff's business and that of the defendant, resulting in injury to the plaintiff. The test is whether the public is likely to be deceived. . . . It is not sufficient that some person may *possibly* be misled but the similarity must be such that any person, with such reasonable care and observation as the public generally are capable of using and may be expected to exercise, would be likely to mistake one for the other." In such a case as the one before us, unfair competition "primarily and strictly . . . relates to the palming off of one's goods as those of a rival trader." *Schechter Corporation* v. *United States,* 295 U. S. 495, 531, 58 S. Ct. 837, 79 L. Ed. 1570; *Goodyear Mfg. Co.* v. *Goodyear Rubber Co.,* 128 U. S. 598, 604, 9 S. Ct. 166, 32 L. Ed. 535; *Howe Scale Co.* v. *Wyckoff, Seamans & Benedict,* 198 U. S. 118, 140, 25 S. Ct. 609, 49 L. Ed. 972, 986; *Hanover Milling Co.* v. *Metcalf,* 240 U. S. 403, 413, 36 S. Ct. 357, 60 L. Ed. 713, 718. " . . . the issue is whether an appreciable number of prospective purchasers of the goods . . . in

connection with which the designation [is] used are likely to regard [it] as indicating the same source. That a few particularly undiscerning prospective purchasers might be so misled is not enough. . . . The issue of confusing similarity is an issue of fact as to the probable or actual reactions of purchasers." Restatement, 3 Torts, § 728, comment a; *Eastern Wine Corporation* v. *Winslow-Warren, Ltd.*, 137 F. 2d 955, 960.

Whether the court's conclusion, tested by the standard of these principles, is supported by the subordinate facts is therefore the decisive question. The defendants eliminated the graph and legible patent number from their catalogue immediately after the judgment; their only publication of the plaintiffs' patent number thereafter was confined to illustrations where it was too minute to be legible to one of normal vision without external aid; this use of it was inadvertent and was discontinued as soon as discovered by the defendants; because of obvious differences, most of the products of the defendants could not be confused with those of the plaintiffs; no one was deceived by the defendants' use of the patent number; the defendants realized no profit and the plaintiffs suffered no damage thereby. These facts, without more, amply support the court's conclusion. Since the plaintiffs were not wronged by unfair competition by the defendants, there was no basis for an accounting or damages.

There is no error.

In this opinion the other judges concurred.