[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This case is brought by the Town of Thomaston seeking injunctive relief for numerous State Building Code and State Health Code violations in a vacant multifamily dwelling located at 13 Center Street, Thomaston owned by the defendant Edward F. Gebelein, Jr.
The dwelling is a wood frame, three-story house, measuring 22' x 31', built circa 1890, located on a downtown rear lot of 1,763 sq. ft. The building is located less than three (3) feet from the building on the neighboring lot to the north, and directly behind a wood frame garage and house on the neighboring front lot of the south and west. Furthermore, the rear porch of the house is on a concrete retaining wall which forms the rear property line. The rear property line is the edge of the pavement of Main Street — an area where pedestrians frequently walk.
The house was declared uninhabitable by the Torrington Area Health District on December 14, 1989 after water pipes froze and burst, causing ceilings to collapse. The fire marshall had the electricity shut off because of fire hazard. The former building official found numerous building code violations. As a result the tenants were vacated under the Uniform Relocation Assistant Act, Conn. Gen. Stat. 8-266, et seq.
For nearly four years the building has been vacant, accessible to vandals, cats, wild animals including raccoons and is a fire hazard to the neighborhood. The current building official found the structure to be "unsafe, lacking any sanitary facilities and dangerous to CT Page 10055 human life and the public welfare." On April 1, 1991, he issued an order of condemnation to the defendant.
As a result of subsequent inspections, he has found the premises to be "structurally unsafe and a danger to passing motorists and pedestrians." He has found the structure to be "rotted beyond repair" and the floor joists [to be] rotted more than 75% of their structural value." Further, "the electrical wiring, plugs, and switches are corroded beyond any repair. . .the plumbing is totally destroyed beyond use. . .heat does not exist. . . the structure is totally uninhabitable for human beings."
During the four years the building has been vacant, the defendant has done nothing to secure the premises until the time of trial or to make any attempt to comply with the orders of the building official on the stated grounds that he has no funds with which to do the work. At the present time, there are no municipal housing rehabilitation funds available for a project of this magnitude and it is questionable whether the structure would be eligible for funding given its advanced state of decay.
The relevant building code provisions, Appendix A, are taken from the BOCA National Building Code 1987, revised; the CABO One Two Family Dwelling Code, revised; and the Connecticut Supplement, issued October 16, 1989, which amends various provisions of the BOCA and CABO Codes. These codes constitute parts of the Connecticut Basic Building Code adopted pursuant to Conn. Gen. Stat. 29-252 and Conn. State Regs. 29-252-1a, and are applicable to all building construction and renovation throughout the state. Cf. Edwards v. Code Enforcement Committee, 13 Conn. App. 2, 9, 534 A.2d 627
(1987).
In its current condition, the building is so deteriorated and accessible to vandals and wild animals that the building poses a fire and health hazard to the neighborhood. Furthermore, portions of the three-story structure are in danger of collapsing onto Main Street, posing a threat to passing motorists and pedestrians. CT Page 10056
These facts alone are sufficient to warrant emergency stabilization measures ordered by the building official. See e.g., Gorra Realty, Inc. v. Jetmore,200 Conn. 151, 160-62, 510 A.2d 440 (1986). The building is not exempt from the health and safety provisions of the building code because of its age. Id. at 168-70; BOCA Code, 104.2, 119.3, 120.1, as amended by Conn. Supplement, 104.2, 119.32. However, in view of the building official's finding that the cost of reconstruction exceeds fifty percent (50%) of the building's replacement value, exclusive of foundations, the building has been condemned and must be demolished. BOCA Code, 120.4, as amended by Conn. Supplement, 120.4. As an example of a serious code violation; the building lacks sufficient fire barrier between it and a neighboring building which is less than three feet away. See CABO, R-203.1, as amended by Conn. Supplement, 203-1.
In addition, the building has been deemed uninhabitable by the local health department, the Torrington Area Health District, which entitles the municipality to obtain injunctive relief to abate a health hazard under both the rented dwelling statute for two-family houses, Conn. Gen. Stat. 47a-52, and the tenement house act governing dwellings for three or more families, Conn. Gen. Stat. 47a-53.
Finally, by virtue of its deteriorated condition and strategic location, the structure constitutes a public nuisance, i.e., an inherently dangerous, continuing condition created by the defendant's unlawful conduct, which in and of itself poses the risk of serious injury to the public. Dingwell v. Town of Litchfield, 4 Conn. App. 621,496 A.2d 213, 216 (1985); Filisko v. Bridgeport Hydraulic Co., 176 Conn. 33, 35-36, 404 A.2d 889 (1978).
Whether or not an absolute nuisance exists is a question of fact. Dingwell, supra. Examples of less serious public nuisances found by the courts in analogous situations include a traffic stanchion illegally placed in the highway, Carabetta v. Meriden, 145 Conn. 338, 341,142 A.2d 727 (1958); the maintenance of a hazardous condition created by tree roots protruding into a sidewalk area, Monick v. Town of Greenwich, 144 Conn. 608, CT Page 10057 612, 136 A.2d 501 (1957); high tension wires placed in close proximity to trees within the bounds of a highway, Higgins v. Connecticut Light Power Co.,129 Conn. 606, 611, 30 A.2d 388 (1943); and a theatre marquis which protruded six inches over a public street, Perakos v. Lombard Bros., Inc., 19 Conn. Sup. 399, 400-02,115 A.2d 465 (1955.
In this case, the Town seeks relief by way of a permanent injunction ordering the defendant to abate a public nuisance by demolishing a hazardous structure. Conn. Gen. Stat. 52-471, et seq. The Town claims irreparable injury to the public and the lack of an adequate remedy at law, i.e., monetary damages. The statutes specifically authorize injunctive relief for violation of the housing code in two-family rented dwellings, Conn. Gen. Stat. 47a-52; and three family tenement houses, Conn. Gen. Stat. 47a-53. As to the building code violations, the building official is entitled to seek enforcement of his demolition order by way of injunctive relief. BOCA Codes 110.1, 117.3, 117.5, as amended by Conn. Supplement, 110.1.
The issuance of an injunction to abate a nuisance is a matter of discretion for the court. Berlin v. Olson,183 Conn. 337, 342, 439 A.2d 357 (1981); Nair v. Thaw,156 Conn. 445, 451, 242 A.2d 757 (1968). The facts in this case rise to such a level of risk to public health and safety so as to constitute compelling circumstances warranting the extraordinary remedy of a mandatory injunction to demolish the building. Cf. Herbert v. Smyth, 155 Conn. 78, 230 A.2d 235 (1967). As an absolute public nuisance, the danger to public health and safety must be abated by way of injunctive relief. Cf. Dingwell, supra.
The court finds that the defendant's premises at 13 Center Street, Thomaston constitute a public nuisance to the neighborhood and to the public using Main Street. The vacant building contains serious building and health code violations which render it uninhabitable and unrestoreable. There is the serious risk of irreparable harm to the public by way of injury to persons or property for which there is no adequate remedy at law. The Town is therefore entitled to an injunction ordering CT Page 10058 the defendant to demolish the building in accordance with the order of the building official and in compliance with the provisions of the State Building Code governing demolition of such structures.
For the reasons stated judgment may enter for the plaintiff, Town of Thomaston, with costs against the defendant, Edward F. Gebelein, Jr. and it is ordered as follows:
1. The defendant shall remove the existing structure located at 13 Center Street, Thomaston, Connecticut on or before December 31, 1993.
2. The defendant shall pay to the plaintiff the sum of Twelve Thousand Dollars (12,000.00) subject to the provision that if the defendant removes said structure as ordered, this portion of the judgment shall abate.
3. In the event that the defendant shall fail to remove the structure as ordered, the plaintiff shall have the right to enter upon the property without interference upon ten (10) days notice to the defendant to carry out the demolition. During said ten (10) day period the defendant shall have the right to remova [remove] any property from the structure at his sole expense so long as the building remains properly secured.
PICKETT, J.
APPENDIX A
[EDITORS' NOTE: PAGE 1 IS ELECTRONICALLY NON-TRANSFERRABLE.]
ARTICLE 1
ADMINISTRATION AND ENFORCEMENT
SECTION 100.0 SCOPE
100.4 Code remedial: This code shall be construed to secure its expressed intent, which is to insure public safety, health and welfare insofar as they are affected by building construction, through structural strength, adequate means of egress facilities, sanitary equipment, light and ventilation, and fire safety; and, CT Page 10059 in general, to secure safety to life and property from all hazards incident to the design, erection, repair, removal, demolition or use and occupancy of buildings, structures or premises.
SECTION 104.0 REPAIRS AND MAINTENANCE
104.2 Maintenance: All buildings and structures and all parts thereof, both existing and new, shall be maintained in a safe and sanitary condition. All service equipment, means or egress, devices and safeguards which are required by this code in a building or structure, or which were required by a previous statute in a building or structure, when erected, altered or repaired, shall be maintained in good working order.
103.3 Additions, alterations or repairs: Additions, alterations or repairs to any structure shall conform to that required of a new structure without requiring the existing structure to comply with all the requirements of this code. Additions, alterations or repairs shall not cause an existing structure to become unsafe or adversely affect the performance of the building. Any building plus new additions shall not exceed the height, number of stories and area specified for new buildings.
Alterations or repairs to an existing structure which are structural or adversely affect any structural member or any part of the structure having a required fire-resistance rating shall be made with materials required for a new structure.
SECTION 110.0 DUTIES AND POWERS OF THE CODE OFFICIAL
110.1 General: The code official shall enforce all the provisions of this code and shall act on any question relative to the mode or manner of construction and the materials to be used in the erection, addition to, alteration, repair, removal, demolition, installation of service equipment and the location, use, occupancy and maintenance of all buildings and structures, except as otherwise specifically provided for by statutory requirements or as provided in 110.2 through 110.8.
SECTION 117.0 VIOLATIONS
117.3 Prosecution of violation: If the notice of violation is not complied with promptly, the code official shall request the legal counsel of the jurisdiction to institute the appropriate CT Page 10060 proceeding at law or in equity to restrain, correct or abate such violation or to require the removal or termination of the unlawful use of the building or structure in violation of the provisions of this code or of the order or direction made pursuant thereto.
117.5 Abatement of violation: The imposition of the penalties herein prescribed shall not preclude the legal officer of the jurisdiction from instituting appropriate action to prevent unlawful construction or to restrain, correct or abate a violation, or to prevent illegal occupancy of a building, structure or premises or to stop an illegal act, conduct, business or use of a building or structure on or about any premises.
SECTION 119.0 CERTIFICATE OF USE AND OCCUPANCY
119.3 Existing buildings: Upon written request from the owner of an existing building or structure, the code official shall issue a certificate of use and occupancy, provided there are not violations of law or orders of the code official pending, and it is established after inspection and investigation that the alleged use of the building or structure has heretofore existed. This code shall not require the removal, alteration or abandonment of, or prevent the continuance of, the use and occupancy of a lawfully existing building or structure, unless such use is deemed to endanger public safety and welfare.
SECTION 120.0 UNSAFE STRUCTURES
120.1 Right to deem unsafe: All buildings or structures that are or hereafter shall become unsafe, unsanitary, or deficient in adequate exit facilities, or which constitute a fire hazard, or are otherwise dangerous to human life or the public welfare, or which involve illegal or improper use, occupancy or maintenance, shall be deemed unsafe buildings or structures. All unsafe structures shall be taken down and removed or made safe and secure, as the code official deems necessary and as provided in this section. A vacant building, unguarded or open at door or window, shall be deemed a fire hazard and unsafe within the meaning of this code.
120.3 Notice of unsafe structure: If an unsafe condition is found in a building or structure, the code official shall serve on the owner, agent or person in control of the building or structure a CT Page 10061 written notice describing the building or structure deemed unsafe and specifying the required repairs or improvements to be made to render the building or structure safe and secure, or requiring the unsafe building or structure or portion thereof to be demolished within a stipulated time. Such notice shall require the person thus notified to immediately declare to the code official acceptance or rejection of the terms of the order.
120.4 Restoration of unsafe structure: A building or structure condemned by the code official is permitted to be restored to a safe condition provided change of use or occupancy is not contemplated nor compelled by reason of such reconstruction or restoration; except that if the damage or cost of reconstruction or restoration is in excess of 50 percent of its replacement value, exclusive of foundations, such structure shall be made to comply in all respects with the requirements for materials and methods of construction of structures hereafter erected.
[EDITORS' NOTE: PAGE 4 IS ELECTRONICALLY NON-TRANSFERRABLE.]
Connecticut State Building Code
Sec. 29-252-1.
Repealed, October 16, 1989.
Sec. 29-252-1a. Connecticut state building code — Connecticut supplement
The BOCA/National Building Code/1987, the BOCA/National Mechanical Code/1987, and the BOCA/National Plumbing Code/1987 of the Building Officials and Code Administrators International, Inc.; as modified by the BOCA 1988 Supplement to those codes; the CABO One and Two Family Dwelling Code/1986, of the Council of American Building Officials; and the National Electrical Code/1987, of the National Fire Protection Association (NFPA 70/1987), except as amended, altered or deleted and by the addition of certain provisions as indicated in the Connecticut Supplement, is hereby adopted by reference as the Connecticut Basic Building Code. Copies of the BOCA/National Building Code and Supplements and the CABO One Two Family Dwelling Code are available from BOCA International Inc., 4051 West Flossmoor Road, Country Club Hills, IL 60477-5795. Copies of the National Electrical Code (NFPA-70/1987) are available from National Fire Protection Association, Batterymarch Park, Quincy, MA 02269. CT Page 10062 Copies of the amendments, deletions, alterations and additions, known as the "Connecticut Supplement," are available from the Bureau of State Fire Marshal and Safety Services, 294 Colony Street, Meriden, CT 06450.
CONNECTICUT SUPPLEMENT
ARTICLE ONE
Administration and Enforcement
(Amd) 100.1 Title.
These regulations together with the BOCA National Building Code. BOCA National Mechanical and Plumbing Codes, the National Electrical Code and the CABO One Two Family Dwelling Code shall be known as the Connecticut Building Code, hereinafter referred to as "the code."
(Amd) 100.4 Code Remedial.
This code shall be construed to secure its expressed intent, which is to insure public safety, health and welfare insofar as they are affected by building construction, through structural strength, provisions for accessibility and usability by persons with physical disabilities, adequate means of egress facilities, sanitary equipment, light and ventilation, and fire safety; and, in general, to secure safety to life and property from all hazards incident to the design, erection, repair, removal, demolition or use and occupancy of buildings, structures or premises.
(Amd) 104.2 Maintenance.
All buildings and structures and all parts thereof, both existing and new, shall be maintained in a safe and sanitary condition. All service equipment, means of egress, devices, and safeguards and provisions for accessibility to or usability by persons with physical disabilities which are required by this code in a building or structure, which were required by a previous statute in a building or structure, when erected, altered or repaired, shall be maintained in good working order.
(Amd) 110.1 General. CT Page 10063
The building official or assistant building official shall pass upon any question relative to the mode, manner of construction or materials to be used in the erection or alteration of buildings or structures, pursuant to applicable provisions of this code and in accordance with such other rules and regulations adopted by the Department of Public Safety. They shall require compliance with the provisions of this code, of all rules lawfully adopted and promulgated thereunder and of laws relating to the construction, alteration repair, removal, demolition, installation of service equipment and location, use, occupancy and maintenance of buildings and structures, except as otherwise specifically provided for by statutory requirements or as provided in 110.2 through 110.8.
(Amd) 119.3 Existing Buildings.
Nothing in this code shall require the removal, alteration or abandonment of, or prevent the continuance of the use and occupancy of any single-family dwelling within six years of the date of occupancy of such dwelling after substantial completion of construction of, alteration to or addition to such dwelling, or of a building lawfully existing on October 1, 1945, except as may be necessary for the safety of life or property. The use of a building or premises shall not be deemed to have changed because of a temporary, vacancy or change of ownership or tenancy.
(Amd) 120.4 Restoration of Unsafe Structure.
A building or structure condemned by the building official may be restored to safe condition provided change of use or occupancy is not contemplated nor compelled by reason of such reconstruction or restoration, except that if the damage or cost of reconstruction or restoration is in excess of 50 percent of its replacement value exclusive of foundations, such structure shall be made to comply in all respects with the requirements of this code as referenced in Section 103.3.
[EDITORS' NOTE: PAGE 7 IS ELECTRONICALLY TRANSFERRABLE.]
Part II — Building Planning
Chapter 2
BUILDING PLANNING CT Page 10064
Section R-203 — Location on Lot
R-203.1 — Exterior Walls. Exterior walls located less than 3 feet from property lines shall have not less than a one-hour fire-resistive rating. The fire-resistive rating of exterior walls located less than 3 feet from property line shall be rated for exposure from both sides.
 EXCEPTION: A common two-hour fire-resistive wall is permitted for townhouses if such walls do not contain plumbing or mechanical equipment, ducts or vents in the cavity of the common wall. Electrical installations are limited to electric wire installed in metal conduit and steel electrical outlet boxes not exceeding 16 square inches in area, provided the combined area of such openings does not exceed 100 square inches for any 100 square feet of wall area. Outlet boxes on opposite sides of walls shall be separated by a horizontal distance of 24 inches.
(Amd) R-203.1 Exterior Walls.
Exterior walls located less than 3 feet from property lines shall have not less than a one hour fire-resistive rating. The fire-resistive rating of exterior walls located less than 3 feet from property lines shall be rated for exposure from both sides.
906.2 Fire-resistance ratings: The fire-resistance rating of exterior walls shall comply with Table 906.2. Loadbearing exterior walls shall also comply with the fire-resistance rating requirements of Section 401.0. The fire-resistance rating of exterior walls with a fire separation distance of greater than 5 feet (1524 mm) shall be rated for exposure to fire from the inside. The fire-resistance rating of exterior walls with a fire separation distance of 5 feet (1524 mm) or less shall be rated for exposure to fire from both sides.

 Table 906.2
 EXTERIOR WALL FIRE-RESISTANCE RATINGS (hours)
===========================================================================
 Use group
 ----------------------------------------------------
Fire separation A, B, E,
distance H F-1, M, S-1 R-2 R-3 F-2, I, R-1, S-2
(feet)a
---------------------------------------------------------------------------
0 to 5 4 3 1 1 2
Greater than 5 to 10 3 2 1 0 1
Greater than 10 to 15 2 1 0 0 0
Greater than 15 to 30 1 0 0 0 0
Greater than 30 0 0 0 0 0
===========================================================================